DAVID J. COHEN, ESQ.
California Bar No. 145748
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306767
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Kenny Miksch**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KENNY MATTHEW MIKSCH,<br><br>Defendant. | Case No. 3:21-cr-00121-JD<br><br>**MR. MIKSCH'S SENTENCING MEMORANDUM**<br><br>Date: February 22, 2022<br>Time: 10:30 a.m.<br>Ctrm.: JD |

### I.

### INTRODUCTION

The murders committed by Steven Carrillo in the summer of 2020 were especially heinous and profoundly distressing crimes. They were vile and unexpected in equal measure, and they were perpetrated by a clearly disturbed individual using political and philosophical beliefs as an excuse for an obviously unjustified slaying. Mr. Carrillo continues to be prosecuted and will undoubtedly face a significant retribution for his crimes. Certainly, it is against this backdrop that the sentencing of Kenny Miksch, as well as those of Messrs. Rush and Ybarra, proceed.

But it is essential that this painful backdrop not unduly poison the well from which the participants in this case must drink. It is essential that this Court bear in mind the actual, specific

conduct in which Mr. Miksch engaged and the intent with which he acted. And it is essential that this Court perform the always difficult (but here especially challenging) task of sentencing Mr. Miksch dispassionately, not with one eye toward the disquieting atmospherics at work, but with both eyes turned toward the 22-year-old man who stands before it for judgment.

A sober, judicial disposition of this case should result not in a term of imprisonment for Mr. Miksch, but a term of probation coupled with a 6-month period of home detention or location monitoring. This hews closely to the recommendation of United States Probation, acknowledges the seriousness of the offense of conviction, and reflects the individual characteristics of the young man being sentenced.

## II.

## STATEMENT OF THE CASE

The probation officer assigned to this case has prepared a detailed and thoughtful presentence report describing, amongst other things, the facts of the offense. *See* dkt. 105. This description recounts the government's theory of the case and incorporates additions requested by the prosecution by way of informal objection(s). It summarizes the events that led up to Mr. Miksch's first ever encounter with police on August 6, 2020. Worth noting, however, is what transpired thereafter.

Mr. Miksch was at his parents' home when a team of FBI agents executing a search warrant detained him and advised him of his rights. Mr. Miksch promptly agreed to a lengthy, on-scene interview. For approximately three hours (before finally requesting an attorney), Mr. Miksch answered all of the questions posed to him. In recognition of his forthcomingness, Mr. Miksch was released from custody. Later, with the assistance of counsel, Mr. Miksch would volunteer for a proffer interview with the prosecution.

Mr. Miksch was arrested anew on April 8, 2021. He remained in custody for nearly a week before being released following a detention hearing on August 14. He has fully abided by every condition of release, including those requiring the monitoring of his internet activity and barring his contacts with any of the other individuals involved in this case, since the time of his release.

On September 20, 2021, Mr. Miksch entered a plea pursuant to a negotiated plea agreement. *See* dkts. 81-82. The agreement provided for an adjusted offense level of 11 (corresponding to a punishment range of 8-14 months, assuming a Criminal History Category of I). This offense level reflected both an upward adjustment for the nature of the records destroyed as well as downward adjustments for acceptance of responsibility and a global disposition. Pursuant to Fed. R. Crim. P. 11(c)(1)(C), the parties agreed that an appropriate disposition of the case was a sentence in the range of 6-12 months. The defense retained the ability to argue for a noncustodial sentence pursuant to U.S.S.G. §5C1.1(c)(3).

On January 31, 2022, United States Probation submitted its presentence report. In that report, Probation recommended a noncustodial sentence of three years of probation and, as a condition thereof, eight months of Location Monitoring. This reasoned and reasonable recommendation was made in recognition of both the circumstances of Mr. Miksch's offense conduct and Mr. Miksch's own personal characteristics.

Probation, meanwhile, recommended a custodial sentence for Mr. Rush. *See* dkt. 92 at 8:27. The government likewise requested that Mr. Rush be sentenced to a 12-month term of incarceration. *Id*. at 2:18. Mr. Miksch does not yet know what sentence the government will request for him, nor does he know what will be requested or recommended for Mr. Ybarra.

## III.

## THE §3553(a) FACTORS SUPPORT A LOW-END SENTENCE SERVED BY WAY OF A TERM OF PROBATION AND HOME DETENTION OR LOCATION MONITORING.

U.S. Probation is correct. A noncustodial sentence is appropriate. A term of probation, coupled with a period of home detention or location monitoring, is sufficient treatment of this matter, without imposing a sentence greater than necessary. Such a sentence is permitted by U.S.S.G. §5C1.1(c)(3), which authorizes the substitution of home detention for imprisonment.[1] And the 18 U.S.C. §3553(a) factors support both Mr. Miksch's request and Probation's recommendation.

### A. The Nature and Circumstances of the Offense Do Not Compel a Custodial Sentence.

As the government and U.S. Probation describe it, Mr. Miksch was recruited for a club, the Grizzly Scouts, by Mr. Rush. The group's presence was primarily internet-oriented; discovery produced by the government indicates that for many of the group's members, the purpose of the organization was to share internet memes, joke about internet counterculture, and discuss political theories. The FBI's tactical intelligence report indicates that the group comprised at least 15 official members, all of whom were given monikers and military-esque ranks suggesting a chain of command (and likely modeled off of Mr. Rush's time in the armed forces). Some subset of these members would occasionally gather for day trips in the woods, where the men would engage in firearms practice at outdoor ranges and light roleplay as soldiers. Not unlike LARP[2] or paintballing, the Scouts pretended to be infantry in a fictional armed service and practiced tactics and techniques used in real military operations. At least eight other individuals, whom the

---

[1] In fact, Application Note 4 to §5C1.1 dictates that, for "a nonviolent first offender[, . . .] the court should consider imposing a sentence other than a sentence of imprisonment."

[2] LARP (live-action roleplaying) refers to a form of roleplaying where the participants physically portray their characters and pretend to inhabit a fictional setting by use of a real world environment.

MR. MIKSCH'S SENTENCING MEMORANDUM
*United States v. Miksch*;
Case No. 3:21-CR-00121-JD

FBI was unable to determine had ever officially joined the Grizzly Scouts, joined the Scouts on their online venues, participating in the sharing of content and political discussions.

Undoubtedly, some of the rhetoric exchanged by members of the Scouts was repugnant. Some of the members' political or philosophical beliefs were objectionable. And some of the comments made by various members represent shining examples of the toxic discourse that fuels division online. All of this language and communication, however, was First Amendment speech. Until Mr. Carrillo would commit his crimes and transgress entirely the intention of the club, the Scouts were engaged in protected activities. And it is no great surprise that a 21-year-old man like Mr. Miksch, deprived of social outlets by the COVID-19 pandemic and the resultant lockdown(s), subject to streams of noxious content that pollute social media, would adopt political positions outside the mainstream.

None of this is to minimize the seriousness of the murders that would later be committed by one of the Grizzly Scout members, Steven Carrillo. None of this is to say that none of the young men in the Grizzly Scouts ever crossed lines of propriety in discussing their political ideologies. Plainly, the Grizzly Scouts did not prove to be a healthy outlet for feelings of alienation, nor did it prove to be a safe group for pursuing hobbyist interests in firearms and military operations. But in sentencing Mr. Miksch, it is important that this Court consider not just the ultimate consequences of the Grizzly Scouts' rhetoric, but the actual conduct in which Mr. Miksch engaged and the perspective he had before a troubled, rogue member of the group took to dismally extreme measures.

Mr. Miksch did not act to assist Mr. Carrillo in his commission of murder. He never assisted in *any* violent acts. He did not work to actively stymy law enforcement's investigation of Mr. Carrillo's crimes with the intent of helping Mr. Carrillo to evade justice. He was a very

young man who participated in a libertarian roleplaying group, neglected to act prudently when espousing political beliefs that could be taken to the extreme, and failed to recognize the real-world implications of the rounds of outrageous one-upmanship in which he engaged as an internet pastime. When confronted with a sequence of events no reasonable person could have anticipated (in the form of a pair of heinous murders he would eventually find out had been committed by another member of the Scouts), Mr. Miksch panicked and deleted WhatsApp from his cell phone.

This conduct was wrong. It was selfish and shortsighted. It could have interfered with the investigation of Mr. Carrillo. And certainly it suggests Mr. Miksch's dawning realization that his words published on the internet may have been understood as something far more nefarious by Mr. Carrillo than they were intended to be. Mr. Miksch's plea reflects his acknowledgement of guilt and acceptance of responsibility for the role he played in contributing to a toxic and, ultimately, deadly environment in his friend group. The question for this Court is whether Mr. Miksch's conduct, in addition to all of those things, also warrants his further imprisonment, in excess of the six days in custody he has already served.

U.S. Probation describes Mr. Miksch's culpability in this offense as "somewhat less than the others." Dkt. 105 at 2. That may be, if anything, an understatement. As horrific as the crimes committed by Mr. Carrillo were, the government does not suggest that Mr. Miksch played any role in their actual commission. There are no records of Mr. Miksch encouraging Mr. Carrillo to commit violence, endorsing violence against individuals, or even interacting individually with Mr. Carrillo. Unlike Mr. Rush, Mr. Miksch did not organize a group and structure it in resemblance of a branch of the armed forces. Unlike Mr. Ybarra, Mr. Miksch did not meet with Mr. Carrillo to discuss plans and assemble assault rifles. Whatever might be said about Mr. Rush's or Mr. Ybarra's culpability, it is clear that Mr. Miksch's is comparatively limited. And it

is clear that the nature of Mr. Miksch' offense is not such as to compel the imposition of a custodial sentence.

### B. Mr. Miksch's History and Personal Characteristics Support a Noncustodial Sentence.

Two years ago, the COVID-19 pandemic disrupted the operations of the entire globe. Two years ago, Mr. Miksch was just beginning his 20s. Two years ago, Mr. Miksch was a shy, young man, a recent college graduate with a girlfriend and a job and a future. Two years ago, Mr. Miksch, a former Boy Scout seeking companionship and friends with shared interests, joined a group called the Grizzly Scouts. That decision, seemingly innocuous at the time, certainly motivated by loneliness and isolation, proved to be a fateful and momentous one.

Mr. Miksch now appears before this Court at 22 years of age. He was approximately two years younger when the offense at issue was committed. As a young man, and as the letters submitted in support of this memorandum demonstrate (*see* Ex. A),[3] Mr. Miksch is kind, hardworking, and committed to his family. Emotionally, he has matured considerably since the summer of 2020. This Court no doubt knows the importance of a mere two years in the development of the adolescent brain. Mr. Miksch is a testament to the value of that passage of time; Mr. Miksch is now every bit the mature, conscientious, contributing member of society that every parent hopes their son eventually becomes.

Mr. Miksch presents no threat of future wrongdoing, not of the sort that gave rise to the instant case, nor of any other type. Mr. Miksch is not militant in his ideology, and he leads a humble life. His hobbies and free time activities – which include hiking, photography, and spending time with his long-term girlfriend – are entirely ordinary. He is not a particularly

---

[3] As defense counsel continues to receive letters from Mr. Miksch's friends and family, Mr. Miksch intends to present to this court at some point in the coming weeks a supplemental submission of additional, supportive letters.

MR. MIKSCH'S SENTENCING MEMORANDUM
*United States v. Miksch*;
Case No. 3:21-CR-00121-JD

7

political person, and he lacks any real devotion to the causes that motivated other members of the Grizzly Scouts (and that corrupted, or perhaps were corrupted by, extremists like Steven Carrillo). Mr. Miksch does not frequent radical websites or follow extremist pundits. He has no continuing interest in the Boogaloo movement or its anti-government bent. Much to the contrary, the despicable acts committed by Mr. Carrillo have unsettled Mr. Miksch and convinced him to stay far away from anything resembling a fanatical political group. Two years ago, Mr. Miksch joined the Grizzly Scouts to find friends who shared his interests in guns and mechanics. Now, he actively avoids anyone who has any affinity for the Grizzly Scout ideologies.

Mr. Miksch is an altogether healthy, well-adjusted, and wholesome young man. His parents are proud of the adult he has become. They should be. They have supported him with love and care, and he has returned the favor. Mr. Miksch works hard and conducts himself soberly. He is a person neither of great privilege nor of great tragedy. Granted the mercy of a noncustodial sentence, his life has immense promise, promise Mr. Miksch vows (and is certain) to realize.

### C. A Noncustodial Sentence Avoids Unwarranted Sentencing Disparities, Affords Adequate Deterrence, Provides Just Punishment, and Will Not Endanger the Public.

A noncustodial sentence likewise satisfies all of the other §3553(a) factors. Section 3553(a)(2), for example, compels this Court to consider the need for the sentence imposed to reflect the seriousness of the offense and to afford adequate deterrence for future criminal conduct. A probationary sentence will accomplish both goals here. As a result of this case, Mr. Miksch will suffer a felony conviction. The weight of this consequence cannot be understated. Already, Mr. Miksch has been fired from one job as a result of this prosecution. The scarlet letter of a conviction (especially one associated with such a particularly charged and politically sensitive set of circumstances) will undoubtedly affect his professional life for years to come. An internet search for Mr. Miksch's name leads to countless search results for news articles and blog posts

MR. MIKSCH'S SENTENCING MEMORANDUM
*United States v. Miksch*;
Case No. 3:21-CR-00121-JD

describing Mr. Miksch as an "anti-police militia member" convicted of a "conspiracy linked to federal guard's slaying." In the age of social media, Mr. Miksch will never be able to leave behind his past. He will spend a lifetime making amends. For him, some will have empathy. Others will not. It will be up to Mr. Miksch to navigate a difficult world that will present, for him, an even more treacherous path.

Whether or not this is a fair punishment for the conduct in which Mr. Miksch engaged, it is a punishment he will necessarily (and has already begun to) endure. The weight of the federal government has come to bear on Mr. Miksch. The FBI has appeared at his doorstep unannounced on two separate occasions. He has spent nearly a week in jail. He has paid his parents thousands of dollars as compensation for his legal defense. He will continue to pay for his actions, long after any term of probation would end.

The punishment Mr. Miksch will inevitably endure, therefore, reflects very well the seriousness of the offense for which he has been convicted. Deterrence has been achieved, and then some. Mr. Miksch is likely to never again trust suspicious characters or individuals with extreme beliefs. He is likely to never again associate in any meaningful way with anyone with whom he has not developed a long-term relationship. He is likely to judiciously monitor the media he consumes and the social media platforms he utilizes. Mr. Miksch stood on the precipice of hell, and in so doing, was forced to consider how he had ended up there. This self-reflection has paid dividends. A further period of incarceration will not further these goals. In this case, imprisonment is the quintessential example of a sentence "greater than necessary."

In connection with his previously filed sentencing memorandum, Mr. Rush submitted to this Court a statistical sentencing study of defendants sentenced pursuant to similar Guidelines and sentencing profiles. This study demonstrates that similarly situated defendants were largely

sentenced to terms of probation (or time served). Because this Court is obligated to avoid unwarranted sentencing disparities (*see* 18 U.S.C. §3553(a)(6)), this study acts as persuasive evidence in support of the imposition of a noncustodial sentence in this case.

As to Mr. Miksch, this study is particularly compelling. Undersigned counsel has represented few defendants as upstanding and responsible as Mr. Miksch. Undersigned counsel likewise posits that it is unlikely many of the defendants cited in Mr. Rush's sentencing study compare to Mr. Miksch's uprightness. The absolute absence in Mr. Miksch's life history of any other controversy or wrongdoing speaks to Mr. Miksch's character. To sentence him to (an additional) term of imprisonment would be to suggest that Mr. Miksch is more dangerous, or more deserving of punishment, than many of the individuals cited in Mr. Rush's study. Such a determination would seem to undersigned counsel patently unjustified.

### IV.

### CONCLUSION.

Mr. Miksch makes no apologies for his conduct. He regrets his choices and abhors his connection (however tangential) to the atrocious acts committed by Steven Carrillo. He asks this Court sentence him in consideration and appreciation of the individual he now is, much more of a fully realized man than he was even two years prior. Mr. Miksch respectfully requests an appropriate sentence similar to that recommended by U.S. Probation – a noncustodial sentence in the form of a term of probation and six months of home detention or location monitoring.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: February 8, 2022        By:/s/ Alexander P. Guilmartin, Esq.
        ALEXANDER P. GUILMARTIN, ESQ.
        Attorneys for Defendant **Kenny Miksch**