DAVID J. COHEN, ESQ.
California Bar No. 145748
djcohen@bayareacrimlaw.com
ALEXANDER P. GUILMARTIN, ESQ.
California Bar No. 306767
apguilmartin@bayareacrimlaw.com
**BAY AREA CRIMINAL LAWYERS, PC**
300 Montgomery Street, Suite 660
San Francisco, CA 94104
Telephone: (415) 398-3900

Attorneys for Defendant **Kenny Miksch**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:21-cr-00121-JD |
| Plaintiff, | **MR. MIKSCH'S REPLY TO UNITED STATES' SENTENCING MEMORANDUM** |
| v. | |
| KENNY MATTHEW MIKSCH, | Date: February 22, 2022<br>Time: 10:30 a.m.<br>Ctrm.: JD |
| Defendant. | |

United States Probation recommends that Mr. Miksch be sentenced not to a term of imprisonment, but instead, to a term of probation with eight months of Location Monitoring. The prosecution disagrees – it requests this Court impose a custodial sentence to the tune of ten months in federal custody. The government fails to set forth an adequate rationale for its request, and it fails to identify any inadequacy in Probation's recommendation. Mr. Miksch persists in his own request that this Court follow the recommendation of Probation and refrain from imposing a custodial sentence. Imprisonment is not necessary to reflect the gravity of Mr.

Miksch's conduct and is greater than necessary to achieve the goals of sentencing set forth in 18 U.S.C. §3553.

The government does reach the same conclusion as Probation regarding Mr. Miksch's relative culpability, conceding that Mr. Miksch is less culpable than his co-defendants. *See* dkt. 108 at 2:24. It contends this lack of culpability justifies a mere two months less of custody, despite the fact that a sentence of a-year-and-a-day for Messrs. Rush and Ybarra would result in them serving effectively the same amount of time as that requested for Mr. Miksch. That is, notwithstanding the government's concession that Mr. Miksch differs from his co-defendants both in the role he played in the Grizzly Scouts and his communications (or lack thereof) with Mr. Carrillo, it nevertheless argues this Court should impose a sentence upon Mr. Miksch that will look, from a practical perspective, much like the sentence it requests be imposed upon Messrs. Rush and Ybarra.

The government supports its custodial request with two primary contentions. First, it points to the nature of Mr. Miksch's conduct. It argues that Mr. Miksch "helped lead" the Grizzly Scouts, communicated with Mr. Carrillo shortly before the second murder, and – like the other members of the group, and as necessary for the obstruction charge – destroyed the evidence of his communications thereafter by deleting WhatsApp and switching to an alternative messaging application. But the government argues rather too much. Mr. Miksch did not "help lead" the Grizzly Scouts, and the prosecution identifies no support for this proposition other than Mr. Miksch's purported "rank" as First Lieutenant. The evidence does not show that Mr. Miksch directed or assisted in any violence, and certainly shows no cooperation with Mr. Carrillo's unanticipated conduct. In fact, the evidence shows that Mr. Miksch did not lead the Grizzly Scouts, did not arrange its activities, and did not recruit

additional members. Mr. Miksch's participation in the group generally seemed to amount to fostering an interest in firearms and assisting in firearm training and safety courses. The prosecution does not allege that the weapons seized from Mr. Miksch's home (the return of which he has not, and does not, seek) were illegally possessed, and it does not argue that Mr. Miksch's conduct with the Grizzly Scouts would have amounted to any criminal offense if not for Mr. Carrillo's later violent outbursts.

It is worth considering the import of the messages Mr. Miksch sent on June 6 that the government highlights in its sentencing memorandum. Notably, Mr. Miksch did not advise Mr. Carrillo to engage in any particular conduct, nor did he endorse Mr. Carrillo's prior actions (indeed, Mr. Carrillo did not consult with the defendants in this case regarding the heinous murder he committed on May 29). Instead, he reported on law enforcement's use of a dog and opined that he did not believe they were conducting a "true raid." It is unclear whether this was Mr. Miksch's genuine opinion, or whether he was attempting to minimize the nature of the raid in order to mitigate the risk of violence from Mr. Carrillo. But in any event, Mr. Miksch's communications did not assist, and were not intended to assist, Mr. Carrillo in combatting law enforcement's arrest. Had Mr. Miksch possessed such intent, perhaps he very well could have facilitated an even more effective, even more violent response. He did no such thing.

Ultimately, Mr. Miksch acted without proper judgment as a misguided young man, plainly uninformed and naïve to the gravity of the group with which he had engaged in camping trips and range shooting. But nothing in Mr. Miksch's personal background suggests any risk of re-offense. Imprisonment will not serve any greater amount of specific deterrence than probation, and it is difficult to conceive of a way in which imprisonment will accomplish general deterrence for a future young man who finds himself in a similar circumstance. The

MR. MIKSCH'S REPLY TO UNITED STATES' SENTENCING MEMORANDUM
*United States v. Miksch*;
Case No. 3:21-CR-00121-JD

government attempts to use Mr. Miksch's positive upbringing and supportive family and social situation as a weapon against him; according to the prosecution, Mr. Miksch's stability and promise only serve to emphasize the depravity of his actions. *See* dkt. 108 at 10:8-14. But as the supportive letters submitted by friends and family attest,[1] Mr. Miksch is a well-adjusted man who has grown a great deal since the conduct that gave rise to this case and who, with mercy from this Court, will be able to establish a healthy and positive life as he enters a pivotal period of time for any young person. He requests, as U.S. Probation recommends, a noncustodial sentence to give him an opportunity to do just that.

Respectfully submitted,

**BAY AREA CRIMINAL LAWYERS, PC**

Dated: February 15, 2022        By:/s/ Alexander P. Guilmartin, Esq.
       ALEXANDER P. GUILMARTIN, ESQ.
Attorneys for Defendant **Kenny Miksch**

---

[1] Counsel has received additional letters in support of Mr. Miksch since the filing of the original sentencing memorandum. Those letters are attached hereto as Exhibit A.

MR. MIKSCH'S REPLY TO UNITED STATES' SENTENCING MEMORANDUM
*United States v. Miksch*;
Case No. 3:21-CR-00121-JD

# EXHIBIT "A"

RECEIVED FEB 14 2022



# MATHEWS MECHANICAL
*"Your Problem Solvers"*

December 29, 2021

To whom it may concern,

I am writing this letter on behalf of Kenny Micksch to attest to his demonstrated personal character and his value to our company as an employee. I have known Kenny for about 8 years, and Kenny has always been a respectful young man towards us and the people around him. We have found him to be dependable and a good, clear thinker when he is being asked to figure out a problem. I have also found him to be truthful and forthcoming about any issues I have asked him regarding his decisions and actions about the work we have asked him to do for us.

Kenny's father has worked for Mathews Mechanical for approximately 15 years, and about 8 years ago, when Kenny was about 14 years old, his dad asked if Kenny could do some odd work at our shop, sorting bolts, sweeping the floor and that sort of menial labor during his Christmas and spring breaks, as well as some of the summer. We had him come & work for us and in fact found him to be a good employee for the work we asked, as well as some light mechanical assembly projects. This continued throughout his school years until high school graduation, when he went to work for another company, full time. He picked up some welding skills at that company and is in fact a very accomplished welder/fabricator.

Last year, when his arrest occurred, his employer suspended him, pending the outcome of the case. We heard that he was not working & not able to look for work until this all settled, so we offered him a position as a welder for our company, as we have an abundance of fabrication work, and his skill set fits our needs very well. We have come to rely on him in our shop and on our field welding projects. Kenny's absence would have a negative impact on our business, financially and quality wise.

I have been told that he could be facing jail time as part of his plea agreement, and I would like to ask for him to be allowed to have an agreement that would allow him to remain at home & continue to work for us during the time he completes whatever sentence is given him. I believe having him productively applied & continuing to be self sufficient will give a better outcome, long term, than locking him up.

Feel free to contact me with any questions you might have my cell phone is below.

Thank you for taking the time to allow me to speak on Kenny's behalf.

Respectfully,

*Lisa Mathews*

Lisa Mathews
President
C: (510) 376-1793

7752 Enterprise Dr. • Newark, CA  94560 • (510) 475-9950 • Fax (510) 475-9959