STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

ERIC CHENG (CABN 274118)
FRANK J. RIEBLI (CABN 221152)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Eric.Cheng@usdoj.gov
    Frank.Riebli@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 21-CR-0121 JD |
| Plaintiff, | **UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM** |
| v. | |
| (1) JESSIE ALEXANDER RUSH, (3) SIMON SAGE YBARRA, and (4) KENNY MATTHEW MIKSCH, | Sentencing Date: February 22, 2022<br>Time: 10:30 a.m.<br>Judge: Hon. James Donato |
| Defendants. | |

The United States recommends that the Court sentence defendants Jessie RUSH, Simon YBARRA, and Kenny MIKSCH to 12 months, 12 months, and 10 months of imprisonment, respectively (within the applicable Sentencing Guidelines of 8 to 14 months in this case). RUSH, YBARRA, and MIKSCH each helped lead the "1st Detachment, 1st California Grizzly Scouts" ("Grizzlies"), an armed anti-government militia group that discussed, trained, and prepared for violence against law enforcement, and—when one of its members then fatally attacked multiple law enforcement officers around the Bay Area—they conspired together to obstruct justice, destroying records and communications of the group. Probation recognizes the gravity of the defendants' conspiracy, agreeing

that custodial sentences are appropriate for two of the three men.  By contrast, each defendant requests to be sentenced only to probation, downplaying the nature of their conduct or alleging reasons to excuse their actions:

*Summary: Sentencing Recommendations*

| Defendant | Sentencing Guidelines | Government Rec. | Probation Rec. | Defense Rec. |
|---|---|---|---|---|
| RUSH | 8–14 mos. imprisonment (Dkt. Nos. 83, 99) | 12 mos. imprisonment (Dkt. No. 92) | 5 mos. imprisonment (Dkt. No. 99) | Probation/time served (Dkt. No. 93) |
| YBARRA | 8–14 mos. imprisonment (Dkt. Nos. 84, 110) | 12 mos. imprisonment (Dkt. No. 107) | 5 mos. imprisonment (Dkt. No. 110) | Probation (Dkt. No. 109) |
| MIKSCH | 8–14 mos. imprisonment (Dkt. Nos. 81, 105) | 10 mos. imprisonment (Dkt. No. 108) | Probation (Dkt. No. 105) | Probation (Dkt. No. 106) |

Based on a consideration of the sentencing guidelines and the factors under 18 U.S.C. § 3553(a), the government's recommended sentences of imprisonment for RUSH, YBARRA, and MIKSCH are warranted in this case.  Indeed, each defendant already "agree[d] that a reasonable and appropriate disposition of this case under the Sentencing Guidelines and 18 U.S.C. § 3553(a)" was "6 to 12 months of imprisonment" in their plea agreements (*see* Dkt. Nos. 81, 83, 84); while each defendant also "reserve[d] the right to request a substitute to incarceration in prison to satisfy the term of imprisonment under the provisions of U.S.S.G. § 5C1.1(c)," the Court should reject any such substitution for the reasons explained in the government's sentencing memoranda, and as set forth below.  *See* Dkt. Nos. 92, 107, and 108.

In arguing for a noncustodial sentence, MIKSCH attempts to portray the Grizzlies as an "internet-oriented" "club" that engaged in "light roleplay," likening it to "LARP or paintballing."[1]  Dkt. No. 106 at 4.  Not so.  As set forth in the defendants' admissions in their plea agreements, the PSRs, and the government's sentencing memoranda, the Grizzlies discussed, trained, and prepared for violent confrontations with the government and attacks on law enforcement—including in May 2020 when they prepared for heavily armed operations in the field with "Operations Orders" identifying law enforcement

---

[1] LARP refers to "Live Action Role Playing."  According to Dictionary.com, LARP is defined as "live action role-playing: a fantasy role-playing game in which participants dress in costume, use props, and act out roles."  *See* https://www.dictionary.com/browse/larp (last accessed Feb. 15, 2022).

as "enemy forces" and considering the possibility of using lethal force.  In fact, the very Facebook group by which the defendants were recruited to the Grizzlies began with individuals identifying their county of residence to the group for one clear reason: to move from the Internet to in-person meetings in preparation for violence.  RUSH went on to comment in that group that they had organized a "detachment" with "No larp shit"— reflective of the group's true intentions, which is not to "role-play" but to prepare for and engage in extremist violence.  Indeed, this background is relevant as to the appropriate imposition of sentence for the defendants, as it goes to demonstrate the corrupt basis and reasoning behind their conspiracy to obstruct justice and destroy evidence in violation of the law.[2]

RUSH describes trauma in his life, in particular his diagnosis of PTSD, in arguing for a noncustodial sentence.  Dkt. No. 93 at 4–8, 16.  But RUSH fails to explain a connection between PTSD and his extended activity founding the Grizzlies over a period of several months, preparing a group of men for hostilities against the government and fueling their aggressions, which tragically culminated in one of its members going on to kill two law enforcement officers.  Nor does it explain the deliberate conspiracy RUSH and his codefendants then carried out to obstruct justice by destroying evidence in view of the member's association with the Grizzlies and their interactions and communications with him.

YBARRA likewise highlights trauma in his childhood, as well as his conduct following his arrest in this case, to justify a noncustodial sentence.  Dkt. No. 109.  But YBARRA's actions are not excused by his alleged good behavior following his arrest.  YBARRA also offers no explanation for his chilling conversations and actions shortly before the shootings, including a meeting with the killer where they built an assault rifle together in his van, which in part motivated his obstruction of justice.  *See* Dkt. No. 84 at 3:7–19.

Finally, defense counsel argues that noncustodial sentences of probation in this case would be

---

[2] MIKSCH also argues that the government's recommendation of two less months of custody than RUSH and YBARRA is unjustified as it would "result in them serving effectively the same amount of time."  Dkt. No. 111 at 2.  To be clear, the government has recommended 12 months of imprisonment for RUSH and YBARRA (also the outer bound of the appropriate sentencing range set forth in the parties' plea agreements under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure)—not 12 months and a day.  MIKSCH's criticisms of the relative recommendations of imprisonment among the defendants are inapposite.

"consistent with the sentences of other defendants across the country who committed similar conduct." Dkt. No. 93 at 19–20; *see also* Dkt. No. 106 at 9–10.  In support of this argument, counsel for RUSH compiled sentencing data for fiscal year 2010 to 2019 from the U.S.S.G. section applicable in this case (§ 2J1.2) with an offense level of 13 (two points higher than the defendants, for reasons explained by counsel), alleging that "[t]he sentencing results show that these defendants . . . were largely sentenced to probation or time served."  To the contrary, the data compiled by the defense showed that half or more of those defendants received custodial sentences, not probation.  *Id.*  Sure enough, statistics from the United States Sentencing Commission's Judiciary Sentencing INFormation (JSIN) similarly confirmed that half—50%—of the defendants sentenced under this guideline section and the offense level referenced by the defense from fiscal year 2016 to 2020 received sentences of imprisonment, with the average length of imprisonment being 11 months and the median length of imprisonment being 12 months—entirely consistent with the sentences recommended in this case.[3]

Accordingly, the recommended custodial sentences would be sufficient but not greater than necessary under the sentencing guidelines and the factors under 18 U.S.C. § 3553(a).  The government respectfully recommends that the Court sentence RUSH to 12 months of imprisonment, YBARRA to 12 months of imprisonment, and MIKSCH to 10 months of imprisonment, each followed by three years of supervised release, at the sentencing hearing.  *See* 18 U.S.C. § 3143(a)(1).

DATED:  February 15, 2022                                            Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney


_____/s/_____
ERIC CHENG
FRANK RIEBLI
Assistant United States Attorneys

---

[3] *See* U.S.S.C., JSIN, https://jsin.ussc.gov/ (last accessed Feb. 15, 2022) ("During the last five fiscal years (FY2016-2020), there were 32 offenders whose primary guideline was §2J1.2, with a Final Offense Level of 13 and a Criminal History Category of I, after excluding offenders who received a §5K1.1 substantial assistance departure. For the 16 offenders (50%) who received a sentence of imprisonment in whole or in part, the average length of imprisonment imposed was 11 month(s) and the median length of imprisonment imposed was 12 month(s).")